IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Alfred L. Williams, #253820 | ) | C/A No. 4:05-2322-TLW-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Warden Colie Rushton; and Henry D. | ) | |
| McMaster, Attorney General of the State | ) | |
| of South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Alfred L. Williams ("petitioner/Williams"), is an inmate in the custody of the

South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on August 19, 2005. Respondents filed

a motion for summary judgment on December 29, 2005, along with supporting memorandum. The

undersigned issued an order filed January 3, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. Petitioner did not file a response and a Report and

Recommendation was issued on April 19, 2006, recommending that the case be dismissed pursuant

to Rule 41(b) for failure to prosecute. Subsequently, on April 20, 2006, petitioner filed a response

and motion for re-consideration of the Report and Recommendation. Thus, on May 11, 2006, United

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

States District Judge Terry L. Wooten issued an order granting petitioner's motion for reconsideration and remanding the case for consideration of the merits.

## I.  PROCEDURAL HISTORY

There has been no opposition filed as to the procedural history as set out by the respondents. Therefore, the undisputed procedural history as set out in respondents' memorandum will be discussed below.

Petitioner, Alfred L. Williams, is presently confined in the Tyger River Correctional Institution of the S.C. Department of Corrections (SCDC).   At the June 1998 term of the Court of General Sessions, the Spartanburg County Grand Jury indicted petitioner for armed robbery (98-GS-42-2796). (PCR App. 269-70).

Petitioner was represented at the trial level by Andrew J. Johnston, Esquire.  On October 29, 1998, petitioner went to trial before the Honorable Donald Beatty and a jury.  The jury found petitioner guilty as charged, (PCR App. 190; 273), and Judge Beatty sentenced petitioner to fifteen (15) years imprisonment. (PCR App. 193; 272).

Petitioner did not appeal his conviction and sentence.

Petitioner next filed an Application for Post-Conviction Relief ("APCR") on January 25, 1999 (99-CP-42-0178).  In his APCR, petitioner raised various claims of ineffective assistance of counsel, as well as other jurisdictional and constitutional issues. (PCR App. 195-211).  The state

through Assistant Attorney General Kevin Tierney filed a Return dated February 14, 2000. (PCR App. 212).[2]

An evidentiary hearing in petitioner's PCR application was held before the Honorable J. Derham Cole on April 9, 2003. Petitioner was present and represented by his appointed counsel, David Hanna; the State was represented by Assistant Attorney General Douglas Leadbitter. Petitioner called himself and his trial counsel to testify; the State called no witnesses. (PCR App. 217). Judge Cole orally denied relief at the hearing, and asked the State to prepare a proposed order.

In the first federal habeas corpus action, respondents through Assistant Attorney General S. Creighton Waters filed a Return and Motion for Summary Judgment on May 13, 2003, in which they argued the case should be dismissed without prejudice for failure to exhaust due to petitioner's pending PCR case.

In the PCR action, Judge Cole filed an Order of Dismissal with Prejudice on June 5, 2003, in which he rejected petitioner's claims, including the claim that counsel was ineffective for failing to file a direct appeal. (PCR App. 243).

Petitioner through Attorney Hanna filed with the state supreme court on July 10, 2003, a notice of appeal from Judge Cole's Order of Dismissal in the PCR action. Aileen P. Clare, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his PCR appeal.

---

[2] While his PCR was pending, petitioner filed his first federal habeas corpus action on March 27, 2003 (4:03-892-25). On November 26, 2003, the undersigned filed a Report and Recommendation ("R&R") in which he recommended the action be dismissed without prejudice based on the pending state PCR action. Petitioner then filed a *pro se* "Objection to the U.S. Magistrate's Report and Recommendation," dated December 12, 2003. However, on December 22, 2003, United States District Judge Terry L. Wooten issued an Order in which he adopted the R&R and dismissed the action without prejudice. The Judgment in the first federal action was issued on December 23, 2003.

On December 18, 2003, Clare filed a Petition for Writ of Certiorari in which she raised the following issues on behalf of petitioner:

> (1) Was trial counsel ineffective for failing to investigate a possible alibi defense?

> (2) Was trial counsel ineffective for failing to protect petitioner's right to a direct appeal?

The State filed a Return to the Petition for Writ of Certiorari on February 27, 2004. On October 20, 2004, the South Carolina Supreme Court issued an order in which they denied the Petition for Writ of Certiorari as to Issue I, but granted the petition as to Issue II - whether counsel was ineffective for failing to file petitioner's appeal.  The Court dispensed with further briefing, overruled the PCR Judge's rejection of that claim, and ordered that briefing proceed on a belated direct appeal.

Thus, on January 19, 2005, Clare filed a Brief of Petitioner for the belated direct appeal, in which she raised the following issues:

> (1) Did the lower court err by denying petitioner's motion to suppress the witnesses's identification of petitioner, when a police officer informed the witnesses that they had selected the "right guy" from a photographic lineup?

> (2) Did the lower court err by denying petitioner's motion for a mistrial, after the state failed to disclose, under Rule 5, an inculpatory oral statement allegedly made by petitioner?

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, filed August 19, 2005, petitioner raised the following challenges to his conviction, quoted verbatim:

4

Ground One:   Ineffective Assistance of Counsel

Supporting Facts:     (1)     Failed to meet with Petitioner

                      (2)     Failed to subpoena Petitioner Alibi witness

                      (3)     Failed to challenge courts jurisdiction

                      (4)     Failed to provide or discuss discovery with Petitioner

                      (5)     Failed to challenge jury selection

                      (6)     Failed to consult with Petitioner over Appeals of Conviction

Ground Two:           Petitioner jury was assembled in a racially discriminatory manner as blacks were excluded.

Supporting facts:     During the impaneling of Petitioner jury the solicitor exuled (sic) all blacks from jury and petitioner Counsel failed to object and or otherwise challelle (sic) said impanelment.

Ground Three:         Circuit Court lacked subject matter jurisdiction to entertain or sentence Petitioner.

Supporting facts:     The Court lacked subject matter jurisdiction to hear petitioner criminal charge in so far as petitioner indictment were not filed with the clerk of court in violation of Rule (3) of S.C.R.C.P.

Ground Four:          Evidence used was insufficient to find Petitioner guilty beyond a reasonable doubt.

Supporting Facts:     Counsel failed to move for a direct verdict of not guilty at the close of the state case as there was no evidence presented that a gun was used nor recovered and counsel failed to request a lesser included offense.

(Petition).

5

### III.  SUMMARY JUDGMENT

On December 29, 2005, the respondents filed a return and memorandum of law in support of their motion for summary judgment.  As stated, petitioner filed a response in opposition on April 20, 2006.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Williams filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir. 1998); <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in <u>Green</u>, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

7

See also Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998); Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998). In Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review enunciated in Green, 143 F.3d 865, was erroneous. Thus, to a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review"). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wilson v. Moore, 999 F. Supp. 783 (D.S.C. 1998).

## V.  FINDINGS

As previously stated, petitioner raised ineffective assistance of counsel as Ground One in his habeas petition with six subparts or allegations as to why counsel was ineffective. The undersigned will discuss each subpart separately.

### 1. Counsel's failure to meet with petitioner.

Petitioner asserts that counsel was ineffective for failing to meet with him. At PCR, petitioner testified that counsel only met with him less than an hour before trial. (PCR App. 220-221). Counsel testified that while he did not know how much time he spent with petitioner, it was sufficient to prepare for trial.

First, respondents assert that this ground is procedurally barred. Respondents contend that a claim is procedurally barred from federal habeas corpus review if the state court to which the petitioner would be required to present the claim would now find it procedurally defaulted. Williams v. Taylor, 163 F.3d 860, 872 (4th Cir. 1998) (quoting Coleman v. Thompson, 501 U.S. 722 (1991)). Respondents argue that while petitioner did assert before the state supreme court in the PCR appeal that counsel failed to investigate his alibi witnesses, petitioner did not assert any independent claim that his counsel failed to meet with him. Respondents contend that the claim cannot be raised in a new state PCR. See, e.g. S.C. Code Ann. § 17-27-45(Supp. 1998) (one-year period of limitation on filing of APCR): Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997) (noting that South Carolina requires all grounds for relief to be raised in the first APCR). Thus, respondents argue that this ground is technically exhausted but procedurally barred from review in federal habeas citing to Coleman v. Thompson, 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

If a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, supra. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, supra.

9

Thus, a prisoner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

In Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.

(Id.).

This issue was raised at PCR but was not raised in the petition for certiorari to the South Carolina Supreme Court. The only issues raised was whether trial counsel was ineffective for failing to investigate a possible alibi defense and for failing to protect petitioner's right to appeal. Ground one, failure to meet with petitioner, was also not raised in the belated direct appeal. Petitioner has not shown cause or prejudice to overcome the procedural bar.  Furthermore, in the absence of cause

and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. Bousley, 523 U.S. at 622-24. "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Id. At 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)). Based on the record before the court, petitioner has failed to show cause and prejudice or actual innocense to overcome the procedural default. Therefore, the undersigned finds this issue procedurally barred.

In the alternative, the undersigned will briefly discuss the merits of this issue.

Respondents argue that counsel was not ineffective and plaintiff has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness. Specifically, respondents argue that there is support in the record for the PCR court's determination that counsel was not deficient, and the state court decision is not objectively unreasonable. Respondents contend that plaintiff did not allege nor did he show in PCR with competent evidence any specific prejudice with regard to this claim. Respondents assert that mere speculation as to what helpful significance counsel might have uncovered had he spent more time with petitioner is insufficient for relief.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398.  If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits . . . , our review of questions of law and mixed questions of law and fact is de novo." Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The PCR Court generally rejected a claim that counsel failed to adequately investigate the case, ruling that petitioner's testimony was not credible. A review of the PCR judge's order of dismissal reveals the following findings:

> The allegation that trial counsel was ineffective for failing to investigate and failing to present witnesses is without merit. The applicant's testimony concerning these deficiencies of trial counsel was not credible. Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. . . . Moreover, the Applicant also failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation. Johnson v. State. Where a PCR applicant fails to show what evidence could have been presented through a different or more thorough investigation, trial attorney will not be found ineffective for failing to present witnesses or for failing to investigate. Jackson v. State, 329 S.C. 345, 495 S.E. 2d 768 (1998). In this case Applicant presented no evidence other than his own self-serving testimony to support his claims that trial counsel failed to investigate or call witnesses. Therefore, the Applicant failed to carry his burden to show prejudice. Accordingly, this allegation of ineffective assistance of counsel is denied.

(PCR transcript 247-248).

In the present case, a thorough review of the record by the undersigned results in the recommendation that respondents' motion for summary judgment be granted. Specifically, when petitioner's claim for habeas corpus relief is liberally construed, the petitioner does not give any supporting facts to substantiate his claims of ineffective assistance of counsel for failing to meet with petitioner. The record does not indicate that counsel for the petitioner was ineffective.

A review of the PCR transcript reveals that petitioner's testimony regarding this subject was is as follows:

13

Q:    Can you give the court some background on why you think he was
      ineffective and didn't assist you as an attorney in the trial?

A:    First of all, I had mandatory discovery. And he never came. He never
      came to the courthouse to see me except for like two days before the
      trial, you know. It's various, it's various instances in there.

Q:    Okay. Did you request that he come and visit you prior to the trial?

A:    Yes, sir.

Q:    And how long in hours did he meet with you prior to the trial?

A:    Probably wasn't even. It didn't amount to even an hour.

Q:    And that was the whole time from the time you were arrested in jail
      until you went to trial, was less than an hour?

A:    Yes, sir?

(PCR Tr.  220-221).

Trial counsel testified at the PCR hearing as follows with regard to this issue:

Q:    How long during the process of time that you were first retained to
      represent Mr. Williams at this trial, how many hours would you
      estimate that you spent with him?

A:    I don't know. I can tell you I spent sufficient time with him to prepare
      for trial.

Q:    Would that be time with him solely or him and his family?

A:    Well, for the most of the time that I was representing him, he was in
      jail, so that would be just with him. The other occasions, I don't
      remember if his family was with him or not.

(PCR Tr. 234).

   The record supports the PCR judge's finding that the petitioner has not demonstrated that

his attorney's performance was deficient by showing that his representation fell below an objective

standard of reasonableness and, further, he has not shown that the attorney's performance actually

14

prejudiced him. In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as to ground one. The undersigned finds that counsel met the reasonableness test of <u>Strickland</u>, <u>supra</u>. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable. Petitioner did not testify at the PCR hearing as to how he was prejudiced or what the difference would have been if counsel had met with him more. In his one page response in opposition to the motion for summary judgment, petitioner only discusses and sets forth the standards for summary judgment. On the same day petitioner filed his response in opposition, he also filed a document entitled "Memorandum of Law to Support Habeas Corpus Petition Filed Under 28 U.S.C. 2254" (hereinafter "Memorandum of Law"). Within this document, petitioner states the following with regard to this issue: "There is a reasonable probability that if my counsel would have investigated, researched, and prepared my defense, the outcome of my case would have been different, and a reasonable probability is a probability sufficient to undermine confidence in the outcome." (Doc. #25). However, petitioner has still failed to set forth how counsel meeting, preparing or investigating his case more would have possibly changed the outcome. Petitioner does not allege nor did he show at the PCR hearing with competent evidence any specific prejudice with regard to this claim. Mere speculation as to what of helpful significance counsel might have uncovered had he spent more time with petitioner is insufficient for relief. Thus, it is recommended that this issue should be dismissed.

**2.  Failure to subpoena alibi witness**

In his habeas petition, petitioner states that counsel was ineffective for "fail[ing] to subpoena Petitioner Alibi witness." He does not set forth any facts as to this claim. In his response to motion for summary judgment, he does not address this issue. In his "Memorandum of Law," petitioner only states the following with regard to this issue: "The petitioner further auer(sic) that his trial counsel was inept, and ineffective for failing to Subpoena his only alibi witness to the trial . . . Bryant v. Scott, 28 F.3d 1411 (5th Cir. 1994)." (Doc. #25, p. 5).

Respondents assert that assuming this issue was in reference to petitioner's girlfriend, Diane Hopkins, it is without merit. Respondents argue that the PCR Court rejected the allegation, finding petitioner's testimony not to be credible and concluding that petitioner failed to show prejudice because he did not produce the actual witnesses counsel allegedly failed to uncover. Respondents contend that this issue was raised on PCR appeal, but the state supreme court denied certiorari on this claim.

A review of the PCR transcript reveals that petitioner testified as follows:

Q:    Can you tell the court about your asking him to have a witness available for trial as an alibi witness?

A:    I had, I had my girlfriend he was supposed to have subpoena, because she knowed. She knew where I was, was at that day and time, and I never did see her. She was a key witness in the case.

Q:    And what was her name?

A:    Diane Hopkins.

Q:    And what could she have told the Court if she was here today?

A:    She could have testified the clothes I was wearing was according to the state's witnesses.

A:      According to the state's witnesses, the clothing that I was wearing
         was - - it's discrepancies about vehicles?

Q:      There are also some discrepancies about vehicles?

A:      Yes, sir.

Q:      And what discrepancies were there she could have testified to vehicles?

A:      When they came, they never did see the dents in the vehicles, and
         there was dents, big dents, clearly in the vehicle.

Q:      And that was in your vehicle?

A:      Yes, sir.

Q:      And how many times did you advise Mr. Johnston that she would be
         a key witness to your case?

A:      Several times.

Q:      Was this done in conversations with him or did you do that in writing?

A:      In conversation mostly.

(Tr. 221-222).

Trial counsel testified as follows:

Q:      Let's get to, I guess, the main issue that Mr. Williams is contesting, and that's
         the alibi witness. Do you have any recollection of that?

A:      I do.

Q:      And did y'all have any conversations about calling that person as a witness?

A:      We did.

Q:      And what were those conversations?

A:      We proposed to or he wanted her to be called as a witness, and, in fact, I sent
         a response to the notice for alibi listing her as one of the witnesses.

17

Q:    And at the trial was there some change of heart as, between you and him as to calling her?

A:    My recollection was she refused to respond to the subpoena.

Q:    Was she properly served with the subpoena?

A:    To the best of my knowledge, yes.

Q:    And is there a reason that you did not ask the judge to postpone the trial until the sheriff could pick her up and bring her as a witness?

A:    I saw some discussion about that in the transcript, but I don't remember now exactly what it was. But I can say that if she wouldn't even come to court after having been served with a subpoena, I don't think her testimony would have been favorable.

Q:    And that's your opinion?

A:    Yes.

Q:    But you know if she was sworn in under oath before a jury what she would testify to?

A:    No, I don't know. But she wasn't supportive enough of him to even appear in court, I think it a reasonable inference that she would not have been favorable.

Q:    What other witnesses did you talk about bringing to court?

A:    The only other witness that I can recall us talking is the one who actually did testify, which was his father.

Q:    And that was not a fact witness but more of a character witness.

A:    He was a fact witness because I think it had something to do with his ownership of the car. There was a car in question that brought Mr. Williams to be the focus of the investigation, and I think that the father was testifying about the fact that he owned the car or something about the presence of where the car was that particular day. I don't remember exactly.

Q:    So the father was at least a quasi-alibi witness at least to where the vehicle was?

18

A:     I don't know whether his testimony was to the best of my recollection.

Q:     Did Mr. Williams tell you what he thought the girlfriend was going to testify to?

A:     Yes, he did.

Q:     And you agreed with him that she would be a good alibi witness?

A:     No. I didn't agree with him about that. He said that she would be an alibi witness. I never talked to her to determine whether or not I thought she would be a good witness or not.

Q:     You agreed with him if that's what she was going to say that she would be a good alibi witness.

A:     And if she were credible.

(Tr. 230-233).

The PCR Court rejected the allegation, finding petitioner's testimony not to be credible, and concluding that petitioner failed to show prejudice because he did not produce the actual witnesses counsel allegedly failed to uncover. (PCR App. 247-48).

As set out above, a review of the PCR hearing transcript reveals that trial counsel testified that he did not interview or speak with petitioner's purported alibi witness prior to trial. During *voir dire*, trial counsel announced that Diane Hopkins was a potential witness. (Tr. 13). Further, before the trial began, the trial judge asked trial counsel if he had checked on the witness he had subpoenaed because he was requested to sequester all witnesses. Trial counsel responded that "she is not complying with the subpoena." (Tr. 61). The judge then instructed that he would send someone to get her. Trial counsel wrote down the address and gave it to an officer and the trial began. (Tr. 61). Trial counsel put up petitioner and petitioner's father as  witnesses and then stated that the defense

19

was resting.  Trial counsel did not ask that the trial be postponed so that the witness could be brought in for failing to come to court when she was under a subpoena to appear. Therefore, in the light most favorable to the petitioner, there was deficient performance by counsel in that he did not interview the purported alibi witness that petitioner had informed him about.

However, even if  petitioner has shown sufficient error, he must establish the second prong of the analysis, prejudice.  To establish prejudice, petitioner must establish that his guilty plea was fundamentally unfair or unreliable; that there is a reasonable probability that but for the error, he would not have entered a plea of guilty.

A review of the PCR transcript reveals that petitioner did not have the purported alibi witness testify at the PCR hearing as to what she could have testified to at trial and did not present any evidence that such an alibi witness existed other than his own self-serving testimony. Further, a review of the trial transcript reveals the victim testified at trial that petitioner walked up to him while he was on a pay phone talking to his wife and told him to get off of the phone sticking a gun into his rib cage. The victim testified that he was face to face with the robber, the weather was clear, nothing was obstructing his view, and he "got a very good look at him for about ten minutes." The victim testified that he watched the robber proceed to walk down the street and he watched the robber get into a "green late, probably early models '80, '83 maybe. Buick Celebrity Century–Buick Century." (Tr. 67). The victim testified that the car was "parked on the side of the road across from Mr. Woodruff's house" and that he could clearly see the car without anything obstructing his view. (Tr. 69-70). The victim testified that the investigating officer brought a six picture lineup to his house the next day to see if he saw the gentleman that robbed him. The victim testified that he took his time, looked at the photographs, and picked out petitioner's picture. (Tr. 73, 81, 82). The victim

20

testified that petitioner was the one that robbed him and that he had no doubt in his mind that petitioner was the man. (Tr. 74). The victim also testified that he identified the vehicle that was used by the robber from some pictures. (Tr. 82).

Mr. Alvin Woodruff, who lived in the neighborhood where the robbery took place, testified that he came out of his house and saw a car parked in front of his house on the other side of the road, and it was running. Mr. Woodruff testified that when he came out he "heard some yelling down at the pay phone. I stayed in the fence. A black male come back from the phone."(Tr. 85). Mr. Woodruff testified that when he first opened the door to come out of his house he saw the car parked in front of his house with no-one in it but it was running. Mr. Woodruff testified that he heard noise at the pay phone so he walked down by his fence but only saw the black male come back from there but did not see what had gone on. Mr. Woodruff testified that the black male looked at him and he looked at the black male and he got in the driver's side of the car and left. (Tr. 87-88). Mr. Woodruff testified that Detective Gist brought a group of pictures to his house and he picked the man he saw leaving the area that day. Mr. Woodruff identified petitioner in court as the man. (Tr. 91). Mr. Woodruff also picked out the picture of the car in court that was parked in front of his house that day. At the trial, Mr. Woodruff identified petitioner in court as the man he saw that day. (Tr. 92, 102).

Based on the evidence of record, the victim identified petitioner as the man who robbed him at gun point and a nearby homeowner, Mr. Woodruff, identified petitioner as the man he saw leaving in a green car. (Tr. 107-108). As previously stated, petitioner did not have this alleged alibi witness testify at the PCR hearing. Petitioner relies only on his own hearsay testimony to prove his allegations. By failing to call this witness, petitioner has failed to establish any prejudice. Thus,

21

petitioner cannot satisfy the prejudice prong of the <u>Strickland</u> analysis.  <u>See</u> <u>Joe v. Eagleton</u> 2004 WL 3317699 (D.S.C. 2004) *citing* <u>Underwood v. State</u>, 309 S.C. 560, 309 S.C. 560, 425 S.E.2d 20 (1992).  Accordingly the state court decision as to prejudice was not objectively unreasonable. Therefore, it is recommended that these this allegation be dismissed.

### 3.  Failure to challenge court's jurisdiction

Petitioner next contends that his counsel was ineffective for failing to challenge the court's jurisdiction.  Respondents assert that this issue is insufficient for relief. Specifically, respondents argue that this issue fails as a basis for relief as petitioner does not specify exactly how his counsel should have challenged the court's jurisdiction and has, thus, failed to properly raise any allegation for federal habeas corpus review. Respondents also argue that this issue is procedurally barred as petitioner raised the issue at PCR which was denied but did not raise it to the state supreme court during the PCR appeal.

This issue was raised at PCR but was not raised in the petition for certiorari to the South Carolina Supreme Court. The only issues raised was whether trial counsel was ineffective for failing to investigate a possible alibi defense and for failing to protect petitioner's right to appeal. Ground one(3), failure to challenge the trial court's jurisdiction, was also not raised in the belated direct appeal. Petitioner has not shown cause or prejudice to overcome the procedural bar.  Furthermore, in the absence of cause and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. <u>Bousley</u>, 523 U.S. at 622-24. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." <u>Id</u>. At 623 (quoting <u>Schlup v.</u>

Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack

on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)). Based on the record before the court,

petitioner has failed to show cause and prejudice or actual innocense to overcome the procedural

default. Therefore, the undersigned finds this issue procedurally barred.

 In the alternative, the undersigned will briefly discuss the merits of this issue.

 Petitioner's main complaint is that the indictment does not have a "clock-stamp" on it.  As

a result, he concludes the trial court was without jurisdiction. Rule 3, SCRCrimP requires that an

indictment be filed with the clerk of court, assigned a criminal case number, and presented to the

grand jury.  Petitioner's indictment is facially valid: it has a docket number assigned by the Clerk

of Court, and it is true-billed and signed by the grand jury foreman.  The copy in the APCR

Appendix reflects that it is true-billed and signed by the grand jury foreman.  The copy in the APCR

Appendix reflects that it is certified as a true copy by the clerk.  (App.p.270).  It is clear the

indictment was properly presented to the grand jury. Therefore, counsel's performance was not

deficient for failing to object on jurisdictional grounds.


**4.  Failure to provide or discuss discovery with Petitioner**

 Petitioner next contends his counsel failed to provide or discuss the discovery with him.

Respondents argue that this issue is procedurally barred.

 At PCR, petitioner testified that counsel never met with him about discovery, and he did not

actually receive the "mandatory discovery" until his father obtained it a year after trial. (PCR App.

220, 223).  Counsel testified that he obtained the Brady and Rule 5 material, and his practice is too

always go over the discovery with his client and believes he did so with petitioner. Counsel stated petitioner did not ask for a copy of the discovery until after trial. (PCR App. 234-35).

In the order of dismissal, the PCR judge did not rule on any independent allegation that counsel failed to go over discovery with petitioner, but did note the testimony in his order, and found petitioner's complaints about counsel were not credible. (PCR App. 245; 247). The issue was not raised to the state supreme court in the PCR appeal or in the belated appeal. Therefore, the undersigned finds that this issue should be dismissed as procedurally barred. Petitioner has failed to show cause and prejudice or actual innocense to overcome the procedural default. Therefore, the undersigned finds this issue procedurally barred.

**5.  Failure to challenge jury selection**

Petitioner next asserts  his counsel was ineffective for failing to challenge jury selection. Respondents assert that at trial, the State struck 3 jurors and counsel struck 10 jurors. There was no Batson motion made by either side. Respondents assert that at the PCR hearing, petitioner claimed his jury was racially prejudiced because his counsel excluded blacks from the jury but could not remember whether counsel conferred with him during jury selection. Furthermore, respondents assert this issue was not specifically addressed in the Order of Dismissal by the PCR judge, was not raised in the PCR appeal, and was not raised in the belated appeal making it procedurally barred.

The undersigned concludes that this issue is procedurally barred in that it was not raised in the appeal of the PCR court or the belated appeal. Therefore, this issue should be dismissed as procedurally barred.

24

Additionally, the issue of whether a prosecutor discriminated in the use of peremptory challenges is factual in nature and is governed by the presumption of correctness. <u>See</u> <u>Evans v. Smith</u>, 220 F.3d 306, 313 (4th Cir. 2000); <u>Gilbert v. Moore</u>, 134 F.3d 642, 657 n.13 (4th Cir. 1998).

### 6.  Failure to consult with Petitioner on right of appeal

Lastly, petitioner contends his counsel was ineffective for failing to consult with him on his right to file a direct appeal from the conviction.  Respondents assert that petitioner can show no prejudice, since he was granted the very direct appeal he alleges counsel failed to perfect.

In the PCR appeal, the South Carolina Supreme Court found counsel improperly failed to file a notice of appeal.  Thus, it granted petitioner a belated direct appeal, but affirmed the conviction after briefing and review. Accordingly, it is recommended that this issue be dismissed as moot.

### B.  Ground Two

In his habeas petition, petitioner asserts the following:

> Petitioner jury was assembled in a racially discriminatory manner as blacks were excluded.  During the impaneling of Petitioner's jury the solicitor excluded all blacks from jury and Petitioners counsel failed to object and or otherwise challenge said impanelment.

Respondents argue that ground two is procedurally barred from habeas corpus review.

The issue that  his jury was assembled in a racially discriminatory manner as blacks were excluded  was not raised in the state court, in the PCR or PCR appeal, and was not raised in the belated appeal. Petitioner has failed to show cause and prejudice or actual innocense to overcome

25

the procedural default. Therefore, the undersigned finds this issue procedurally barred. Accordingly, it is recommended that this issue be dismissed as procedurally barred.

### C.  Ground Three

Petitioner raised the following as Ground Three in his habeas petition:

> Circuit court lacked subject matter jurisdiction to entertain or sentence Petitioner.  The court lacked subject matter jurisdiction to hear Petitioner criminal charge in so far as Petitioner indictment was not filed with the clerk of court in violation of Rule (3) of S.C.R.C.P.

Petitioner alleges a subject matter jurisdiction violation because his indictment was supposedly not filed with the clerk of court as required by Rule 3, SCRCrimP.

It is recommended that this issue be dismissed as it is not cognizable in federal habeas corpus, as it depends entirely on a state court's determination of its own jurisdiction under state laws. As this issue pertains to the state court's jurisdiction, this issue should be dismissed because claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.). Therefore, the undersigned recommends that respondents' motion for summary judgment be granted as to Ground Three.

### D.  Ground Four

Petitioner's last ground for relief is as follows:

> Evidence used was insufficient to find Petitioner guilty beyond a reasonable doubt.  Counsel failed to move for a direct verdict of not guilty at the close of the state case as there was not evidence

presented that a gun was used nor recovered and counsel failed to
request a lesser included offense.

Petitioner essentially alleges two separate issues: (1) that the evidence was insufficient to

support the verdict, and (2) that his trial counsel was ineffective for failing to move for directed

verdict. Respondents initially contend that this ground is procedurally defaulted from habeas corpus

review. Respondents contend that in his PCR application, petitioner asserted that the evidence was

insufficient to sustain a conviction but did not expressly testify to any such claim, whether

freestanding or in the context of ineffective assistance, at PCR, and the PCR court did not rule on

any such claim.  Finally, the issue was not raised in either context to the state supreme court in the

PCR appeal.

Both issues are procedurally barred whether it is considered in the context of a freestanding

claim or a claim of ineffective assistance.  The claim of insufficient evidence was not raised to the

trial court at trial or to the state supreme court during the direct appeal.  The claim counsel failed to

challenge the legal sufficiency of the evidence was not presented to the PCR court or to the state

supreme court during the PCR appeal.  Since petitioner did not raise these two issues to the state's

highest court, this Ground Four is procedurally barred from review in federal habeas corpus.

Petitioner has failed to show cause and prejudice or actual innocense to overcome the procedural

default. Therefore, the undersigned finds respondents' motion for summary judgment should be

granted with respect to Ground Four.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document #12) be GRANTED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 11, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"

### &

### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

29